**E-FILED**
Thursday, 26 September, 2013  03:00:40 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **JAMES LOSEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 11-1328** |
| | ) | |
| **RAJU PATURI, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION**

Plaintiff, proceeding *pro se*, was housed at the McLean County Detention Facility ("MCDF") at all times relevant to this cause of action.  Now before this Court is Defendant Raju Paturi's Motion for Summary Judgment [77] on Plaintiff's claim for deliberate indifference to Plaintiff's serious medical needs, as well as a Motion for Summary Judgment [82] by Defendants Sheriff Mike Emery, Greg Allen, and Jamey Kessinger on the same issue.

Summary judgment will be granted.  Plaintiff has not come forth with evidence sufficient to create a genuine issue of material fact as to whether any Defendant was aware of a substantial risk of serious harm to Plaintiff and consciously disregarded that risk during the times Plaintiff sought medical services.  During the time in question, Defendant Paturi was a psychiatrist who was under contract for inmates needing psychiatric care at the MCDF.  Defendant Mike Emery was the McLean County Sheriff, Gregory Allen was the Jail Superintendent, and Jamey Kessinger was the Assistant Jail Superintendent.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(1)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.*; *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

## FACTS

Plaintiff was transferred to the MCDF from another facility on May 27, 2011. He has been under the care of psychiatrists and taking different psychiatric medications on and off for most of his life. When Plaintiff arrived at the MCDF, he had a prescription for Abilify and a three day supply of the medication. The nurse in booking referred him for mental health services. The next day, he was seen by Chris Cashen, the contract clinician who provides

counseling and assessment services for inmates at the MCDF, who referred him to be seen by a contract psychiatrist, Dr. Paturi.

Dr. Paturi saw Plaintiff on June 2, 2011.  This initial evaluation included review of subjective and objective data, as well as Plaintiff's medical, personal, and past psychiatric history, including prescribed medications and therapies.  Dr. Paturi's treatment notes indicate that he evaluated Plaintiff's appearance, general behavior, attitude, state of consciousness, attention, orientation, psychomotor activity, mood, effect, speech, form of thought, content of thought, perceptions, judgment, memory, insight, and intellectual functioning.  His records reflect that Plaintiff denied mood swings, racing thoughts, peculiar thoughts, and suicidal or homicidal ideations.  Dr. Paturi did not observe any psychotic features, symptoms, or any concerning behavior.  Dr. Paturi diagnosed potential schizoaffective disorder, impulse control disorder, or antisocial personality disorder and did not believe that Plaintiff's presentation warranted administration of psychotic medication.  Given that he would have ongoing access to Plaintiff in a controlled and structured environment, it was Dr. Paturi's professional opinion that Plaintiff should have a trial period off psychotic medication, particularly as Plaintiff was not exhibiting psychotic features and the serious side effects associated with long term use of psychotic medication.

Dr. Paturi discussed his findings with Plaintiff, and Plaintiff was very resistant to being taken off psychiatric medication.  After discussion, Dr. Paturi discontinued Plaintiff's prescription for Abilify and Benadryl, started a prescription for Risperdal and Trazodone, and continued an order for Cogentin.  Risperdal is a psychotic medication of the same level as Abilify and with the same effectiveness and potential side effects.  Dr. Paturi prescribed

Risperdal in an attempt to alleviate Plaintiff's concerns about being taken off psychotic medications altogether.  Plaintiff refused to take the Risperdal.

Dr. Paturi saw Plaintiff for the second time on June 16, 2011.  Plaintiff advised that he refused to take the Risperdal and Cogentin, but wanted to continue Trazodone to help with his sleep.  Dr. Paturi observed no psychotic features, mood swings, racing thoughts, suicidal or homicidal ideations, or other concerning behavior.  Following this examination, Plaintiff was diagnosed with a non-specific impulse control disorder and antisocial personality disorder, the treatment for which does not require psychotic medications.  Accordingly, the prescriptions for Risperdal and Cogentin were discontinued.

On July 28, 2011, Plaintiff saw Dr. Paturi for a third time.  Plaintiff described having rocking movements, which can be associated with long-term use of psychotic medications, and asked to return to a small dose of Cogentin.  During the exam, Dr. Paturi did not observe any psychotic features, symptoms, suicidal or homicidal thoughts, or any concerning behavior.  As a result, Dr. Paturi continued the prescription for Trazodone and started a prescription for Cogentin.

During his fourth visit to Dr. Paturi on August 18, 2012, Plaintiff complained of anxiety and reported that the Cogentin was helping with his rocking movements.  Dr. Paturi discussed prescribing BuSpar for the anxiety and increasing his dosage of Trazodone.  Plaintiff again demonstrated no psychotic features, symptoms, or concerning behavior.  Dr. Paturi continued the prescription for Cogentin, increased the prescription for Trazodone, and started a prescription for BuSpar.

The final time Dr. Paturi saw Plaintiff was September 29, 2011.  Plaintiff reported that he had stopped taking his Trazodone, Cogentin, and BuSpar, and Dr. Paturi noted that he was

4

feeling somewhat better.  He demonstrated no psychotic features, symptoms, or concerning behavior.  Consequently, Dr. Paturi discontinued the prescriptions that Plaintiff had voluntarily stopped taking.

At no time during this course of treatment did Dr. Paturi hold the professional opinion that Plaintiff's conditions warranted the prescription of Abilify.  In his opinion, there was no negative change in Plaintiff's psychiatric presentation.  To the contrary, Plaintiff appeared to be responding well.

Plaintiff alleges that on June 4, 2011, he became very ill after his Abilify was discontinued and suffered a heart attack.  Despite his symptoms, he did not go to medical call at 3:35 p.m. that afternoon, but was later taken to the hospital with complaints of chest pain and abnormal sweating.  Plaintiff was admitted for a complete cardiac workup per protocol.  A cardiac monitor and EKG both indicated normal heart readings.  There were no abnormal physical findings and his chest x-ray, blood work, and serial troponin level checks were all normal.  A cardiolyte stress test was also normal.  Based on all these results and examination, the attending physician opined that Plaintiff did not have a heart attack.

Plaintiff told the attending physician that he was not taking his prescribed Risperdal because he had been taking Abilify and did not want to take Risperdal.  The attending physician thought it was possible that Plaintiff was experiencing withdrawal symptoms and recommended that he take the Risperdal.  Plaintiff again refused to take the Risperdal.

Plaintiff filed the present complaint alleging that Dr. Paturi was deliberately indifferent to his serious medical needs during his time at MCDF by refusing to prescribe Abilify for his mental condition.  Defendants Emery, Allen, and Kessinger are argued to have been deliberately indifferent as a result of a policy of discouraging the use of certain medications based on cost

and their acquiescence to Dr. Paturi's treatment.   Defendants have moved for summary judgment, and this Order follows.

## ANALYSIS

Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The injury or need must be objectively serious, and the official must personally know of the risk and consciously disregard it.  *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999); *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).  An objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (quoting *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997))).  Generally, an inmate's disagreement or dissatisfaction with the medical care that he receives in custody does not state a constitutional claim under the Eighth Amendment even if the quality of care was substandard to the point of negligence or malpractice.  *Estelle*, 429 U.S. at 106.

Defendant Paturi denies that he was deliberately indifferent to any of Plaintiff's medical needs.  The record indicates that Dr. Paturi was aware of Plaintiff's medical condition and needs, and that he examined and rendered treatment on each of the five occasions that Plaintiff saw him.  The record also reveals that Dr. Paturi responded to Plaintiff's subjective complaints and concerns, prescribing Risperdal in response to Plaintiff's concerns about being completely off psychotic medication, prescribing or increasing Trazodone in response to Plaintiff's sleep

problems, resuming a prescription for Cogentin after Plaintiff indicated that he had done well on that medication, and prescribing BuSpar in response to Plaintiff's complaints of anxiety.

The only request that Dr. Paturi did not acquiesce to was Plaintiff's demand that he specifically be prescribed Abilify rather than Risperdal, yet Risperdal is of the same class and has the same effectiveness and side effects as Abilify, and there is nothing in the record to suggest that this was not an appropriate substitution in any event.  In fact, Plaintiff admits that Risperdal had previously been considered as a treatment option at the time he was initially prescribed Abilify.  Plaintiff claims that his concern was that Risperdal would put him at a greater risk for seizures, but there is no medical evidence supporting this assertion.  To the contrary, the record contains unrefuted evidence establishing that both Abilify and Risperdal pose the same risks for individuals suffering from seizure disorder.

At no time during the treatment did Plaintiff display psychotic behaviors or any change in psychiatric presentation.  To the extent that Plaintiff demonstrated withdrawal symptoms, that would be reasonably expected given his refusal to take the prescribed medications.  Moreover, at the end of his treatment, Plaintiff was no longer taking any of his prescribed medications but the treatment notes indicate that he was feeling somewhat better.  Plaintiff has not introduced anything other than his bald opinion to establish that this course of treatment was substandard, much less that it was purposefully calculated to unnecessarily and wantonly inflict pain upon him.

Plaintiff's claim boils down to the fact that he disagreed with the medication chosen by Dr. Paturi.  The medication chosen by Dr. Paturi is of the same class as Abilify and has the same effectiveness and side effects as Abilify.  In fact, the attending physician who saw Plaintiff while he was hospitalized prescribed the same course of treatment as Dr. Paturi.  This is not a case

where Plaintiff tried the Risperdal and found it to be less effective; he simply refused to take it at all, so he would have no way of knowing whether it was effective for him or not.  Dr. Paturi exercised his professional judgment as a psychiatrist, and Plaintiff merely disagrees.

The fact that he disagrees with what treatment he was given alone cannot support a valid claim for deliberate indifference under the Eighth Amendment.  *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).  "Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the Amendment's purview." *Id.*, (quoting *Estelle*, 429 at 107); *Johnson v. Doughty*, 433F.3d 1001, 1013 (7th Cir. 2006).   While the medical care Plaintiff received "may not have been entirely to his satisfaction, the Constitution does not guarantee a prisoner's choice of a physician, a mode of treatment, or a place of treatment, nor does it (or could it) guarantee a particular outcome or level of comfort in the face of physical maladies." *Gerald v. Ind. Dep't of Corr.*, 2009 WL 1795178, at *3 (S.D. Ind. June 23, 2009) (citations omitted); *Estelle*, 429 U.S. at 106.   There is simply no basis for finding "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate a complete abandonment of medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).  Accordingly, Dr. Paturi is entitled to summary judgment in his favor.

Defendants Emery, Allen, and Kessinger maintain that they did not engage in any intentional mistreatment of Plaintiff or try to prolong Plaintiff's pain and suffering as would be required to demonstrate deliberate indifference on their part.  MCDF policy provides that prescription medications are to be provided to inmates only on order of a physician, dentist, or other authorized medical professional.  Defendants maintain that jail personnel do not participate in an inmate's medical and/or psychiatric care, particularly which treatment or medications to

administer.  Plaintiff was screened upon arrival and referred for psychiatric care according to the process and was treated by the contract psychiatrist, Dr. Paturi.  These Defendants were not directly involved in this process.

Plaintiff asserts that Defendants Emery, Allen, and Kessinger acquiesced to Dr. Paturi's treatment and prescription decisions.  This is no surprise.  Dr. Paturi is the medical professional and they are untrained in the medical field.  It is well settled that jail administration is entitled to reasonably rely on the medical opinions and evaluations of certified health care providers. *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005).

> If a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing the prisoner is in capable hand. . . . Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. . . .We do not think [a prison official's] failure to take further action once he had referred the matter to the medical providers can be viewed as deliberate indifference.

*Id.*  The exception to this general rule is where prison officials have reason to believe that prison doctors or their assistants are mistreating or not treating a prisoner.  *Id.*; *Johnson*, 433 F.3d at 1012.

Where, as here, prison officials are supervisory administrators, a claim of deliberate indifference requires a showing of direct responsibility for the misconduct; the official must have caused or directly participated in the constitutional deprivation. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993).  The record is devoid of evidence that there was an unconstitutional policy, practice, or custom with respect to medical or mental health treatment at the MCDF.  Furthermore, while Plaintiff filed several grievances over the following months regarding his access to free copies, legal materials, and intent to file a lawsuit that may have included a stray or vague reference to his treatment, he did not file a grievance specifically about

Dr. Paturi's refusal to prescribe Abilify that was seen by either Sheriff Emery or Jail Superintendent Allen.  Although Allen may have been told that Plaintiff was taken to the hospital on June 4, 2011, the record is devoid of any indication that either of these Defendants was even aware of Plaintiff's psychiatric condition or treatment, and they are therefore entitled to summary judgment.  *Id.*; *Johnson* 433 F.3d at 1010.  He did file an inmate request on June 3, 2011 to Inmate Services complaining about the discontinuation of Abilify and requesting information to prepare a lawsuit.  Assistant Jail Superintendent Kessinger responded to this grievance.  Plaintiff was then seen by Dr. Paturi three more times.  Again, non-medical prison administrators are not deliberately indifferent "simply because [they] failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."  *Id.*, at 1012, *citing Greeno*, 414 F.3d at 656.  Moreover, the record reveals that Plaintiff's hospitalization was likely the result of withdrawal symptoms brought on by Plaintiff's refusal to comply with Dr. Paturi's prescribed treatment, and the Court has already concluded that Plaintiff fails to establish any deliberate indifference or reckless mistreatment on the part of Dr. Paturi.  While Defendant Kessinger, like Defendant Allen, was made aware that Plaintiff was taken to the hospital on June 4, 2011, there is no indication that he was advised of the diagnosis or Dr. Paturi's treatment decisions.  Plaintiff was returned with the diagnosis of a non-specific muscle or skeletal pain, as well as the suggestion that his withdrawal symptoms were being caused by his own refusal to take the prescriptions as recommended.  The attending physician at the hospital recommended that Plaintiff should follow Dr. Paturi's prescribed treatment to alleviate his withdrawal symptoms.  Defendant Kessinger is therefore entitled to summary judgment, as well.

**IT IS THEREFORE ORDERED:**

**1) Defendant Paturi's Motion for Summary Judgment [77] is GRANTED.  The Motion for Summary Judgment [82] by Defendants Emery, Allen, and Kessinger is**

**also GRANTED.  The Clerk of the Court is directed to enter judgment in favor of all Defendants and against Plaintiff.  This case is terminated, with the parties to bear their own costs.**

**2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should identify the issues Plaintiff will present on appeal.  *See* Fed. R. App. P. 24(a)(1)(c).  If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED this 26th day of September, 2013.


<u>s/ James E. Shadid</u>
James E. Shadid
Chief United States District Judge